UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MELISSA GRIMES, *et al.*,

Plaintiffs,

v.

BRIAN CATES, *et al.*,

Defendants.

Case No. 1:25-cv-01805-CDB

ORDER GRANTING MOTION TO DISMISS BY DEFENDANT BRIAN CATES

(Doc. 28)

ORDER GRANTING REQUEST FOR JUDICIAL NOTICE BY DEFENDANT BRIAN CATES

(Doc. 28-3, Exhibits 1 & 2)

**21-Day Deadline**

Pending before the Court[1] is the motion of Defendant Brian Cates ("Defendant" or "Cates"), to dismiss all claims against him asserted in the operative, second amended complaint. (Doc. 28). On May 26, 2026, Plaintiffs Melissa Grimes and Carlos Campbell ("Plaintiffs") as successors-in-interest to Malik Joshua Campbell filed an opposition to the motion to dismiss, and on June 5, 2026, Defendant filed a reply. (Docs. 34, 35). The motion was not properly noticed for hearing and the

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on February 5, 2026, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 12).

Court deems it suitable for disposition on the pleadings and the parties' briefs. *See* E.D. Cal. Local Rule 230(g).

**I. Background**

Plaintiffs are the mother and father of Malik Joshua Campbell ("Decedent"), who, according to the allegations of the operative, second amended complaint ("SAC"), died from a drug overdose on September 9, 2025, while serving a 24-year prison sentence at California Correctional Institution ("CCI"). (Doc. 23 ¶¶ 1, 7, 8, 30). Plaintiffs sue the CCI warden (Cates) and several other "Doe" defendants described in the SAC as the associate warden and line and supervisory correctional staff at CCI. Plaintiffs seek recovery under 42 U.S.C. § 1983 and under state law theories, including wrongful death, negligence, and violation of Cal. Gov't Code § 845.6. *Id.* ¶¶ 66-113.

According to the allegations of the SAC, on September 9, 2025, Decedent's cellmate reported to correctional staff that Decedent was nonresponsive on his bed. Staff responded and transported him for emergency medical treatment. *Id.* ¶ 34. Treatment was unsuccessful and ambulance staff pronounced Decedent dead approximately 30 minutes after his cellmate had reported him nonresponsive. *Id.* His cause of death was deemed acute fentanyl and methamphetamine toxicity. *Id.* ¶¶ 9, 34. Postmortem analysis revealed Decedent had died at least several hours prior to his cellmate's reporting that Decedent appeared nonresponsive. *Id.* ¶¶ 57-61.

Defendant Cates bore ultimate personal responsibility for inmate safety at CCI – including ensuring that mandatory welfare checks were conducted at required intervals, that adequate staffing was maintained to perform those checks, and that constitutionally adequate overdose prevention and response protocols were implemented and enforced. *Id.* ¶ 9. Defendant Cates was aware that in 2022 and 2023, fentanyl overdose deaths increased dramatically in CDCR facilities and became the leading cause of inmate deaths. *Id.* ¶¶ 31, 71a. Additionally, Defendant Cates became aware through his review of reports that a CCI inmate died from a drug overdose on March 7, 2024, and that no welfare check had detected the inmate's medical emergency. *Id.* ¶ 9a. This incident alerted Defendant Cates to the fact that inmates at CCI faced a substantial risk of dying from a drug overdose. *Id.* ¶ 32. He separately was aware through his review of reports that two other inmates were killed by their cellmates in April and August 2025 (*id.* ¶ 9c) and that their deaths were reported

by their cellmates, not because a correctional officer discovered the deaths during a mandatory welfare check. *Id.* ¶ 33. The three CCI deaths preceding Decedent's death established "that CCI's welfare check compliance had failed to its most basic purpose." *Id.* ¶ 40. Nevertheless, Defendant Cates chose not to increase welfare check frequency or enforcement, did not increase staffing, and did not implement "enhanced monitoring protocol." *Id.* ¶ 9b.

On information and belief, "Defendants" made no attempt to conduct welfare checks on Decedent's cell over a course of at least 18 hours leading up to his death. *Id.* ¶¶ 28, 46, 51, 52, 53, 72a. CCI was "grossly understaffed," which contributed to staff failure to conduct mandatory welfare checks on Decedent. *Id.* ¶ 42.

## II. <u>Governing Authority</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

*Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1162 n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id.* In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002). "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Hamilton*, 746 F. Supp. 2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

## III. <u>Discussion</u>

### A. Requests for Judicial Notice (Docs. 28-3; Exhibits 1, 2)

Federal Rule of Evidence 201 permits a court to take judicial notice of any facts "generally known within the trial court's territorial jurisdiction "or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). "Facts subject to judicial notice may be considered

by a court on a motion to dismiss." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take judicial notice"); *Pruitt v. United States Bank, N.A.*, No. 1:13-cv-01198-AWI-SKO, 2013 WL 6798999, at *1 (E.D. Cal. Dec. 20, 2013) (*citing In re Russell*, 76 F.3d 242, 244 (9th Cir. 1996)); *see Indemnity Corp v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (a court may take judicial notice of matters of public record outside the pleadings).

Defendant makes two requests for the Court to take judicial notice: (1) first, of the existence and content, although not the truth of any matters asserted, of Plaintiff's first California Government Claim that is dated November 4, 2025 (Doc. 28-3, Exhibit. 1); and (2) second, of the existence and content, although not the truth of any matters asserted, of Plaintiff's second California Government Claim that is dated March 9, 2025. (Doc. 28-3, Exhibit. 2).

Plaintiffs' Government Claim forms are suitable for judicial notice as a matter of public record that can be readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may take judicial notice of matters of public record."); *see, e.g.*, *Gaines v. Langurand*, No. 2:21-cv-00808-KJM-JDP (PS), 2024 WL 557527, at *3 (E.D. Cal. Feb. 12, 2024) ("Courts routinely conclude that government claims are proper subjects of judicial notice."); accord *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 811 (N.D. Cal. 2019); *Kim v. City of Belmont*, No. 17-cv-02563-JST, 2018 WL 500269, at *3 (N.D. Cal. Jan. 22, 2018); *cf. Bustos v. City of Fresno*, No. 1:20-cv-00066-DAD-BAM, 2020 WL 4748166, at *5 (E.D. Cal. Aug. 15, 2020) ("The court may take judicial notice of the filing and contents of a government claim, but not the truth of the claim.") (quoting *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 369 n.1 (2014)). Moreover, because Plaintiffs refer to and rely on the Government Claim forms in the SAC (Doc. 23) and because they do not oppose Defendant's request for judicial notice of the documents or otherwise challenge the authenticity of the document proffered, the Court considers the contents of the Government Claim form to be true for purposes of ruling on Defendant's motion to dismiss. *See, e.g., Hamilton*, 746 F. Supp. 2d at 1168.

///

**B. Plaintiffs Fail to State Cognizable § 1983 Claims**

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)). This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

1. Claim I: Eighth Amendment Failure to Protect

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Id.* (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

To state a failure to protect claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*, 511 U.S. at 847. This requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Id.* at 837. To be subjectively aware, it is not enough that an official is merely "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, ... he must also draw the inference." *Id*. While this "entails something more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted).

Here, Plaintiffs fail to adequately allege that Defendant Cates was subjectively aware of a serious risk of harm to Decedent – in other words, they fail to plead that Cates was aware of facts implicating the serious risk of harm and inferred from those facts that Decedent was at risk of such harm. Importantly, Plaintiffs do not allege that Cates was aware that mandatory safety checks of Decedent leading up to his death were deficient. Rather, they allege that Cates either knew or was constructively aware of the fact that mandatory safety checks were deficient with respect to three other inmates, yet, despite bearing ultimate responsibility for inmate safety, he failed to ensure that mandatory welfare checks were properly conducted. For this proposition, Plaintiffs point out that Cates was aware through his review of facility reports that a CCI inmate died from a drug overdose approximately 18 months prior to Decedent's death and that, within five months of Decedent's death, two other CCI inmates were killed by their cellmates. Plaintiffs allege that all three of these deaths were reported to facility staff by the cellmates and were not detected through mandatory staff welfare checks.

These facts do not permit the drawing of a reasonable inference that, prior to Decedent's death, Cates was aware that Decedent faced a substantial risk of harm and was deliberately indifferent to that risk. First, Plaintiffs do not allege that Cates actually knew that Decedent (specifically) faced an identified risk of harm (either that his safety checks had been deficient or that he was particularly vulnerable to suffering a drug overdose)—rather, they argue Cates had constructive knowledge of a general risk throughout CCI that inmates' deaths were being discovered by staff through cellmate reporting, not through their conduct of mandatory safety checks. This is insufficient to satisfy the subjective prong of the deliberate indifference test. *See Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015) ("Our cases support the proposition that obviousness of a risk may be used to prove subjective knowledge, not that liability may be based on constructive knowledge."); *see also Est. of Soliz v. Vang*, No. 2:25-cv-03766-JAM-SCR, 2026 WL 3016182, at *7 (E.D. Cal. Oct. 6, 2026) (acting warden not deliberately indifferent, despite reviewing reports concerning fentanyl related incidents and overdoses at the institution, for failing to implement additional or enhanced measures that could have reduced the risk of overdose faced by the plaintiff); *West v. Macomber*, No. 1:26-cv-01718-KES-EPG (PC), 2026 WL 1694642,

at *6 (E.D. Cal. June 11, 2026) (recommending dismissal of inmate's failure to protect claim against warden; reasoning, "[n]otably, Plaintiff does not allege any facts that [the CDCR Secretary and warden] knew of a specific risk to him, e.g., that he informed them personally of the risk or they otherwise had reason to suspect that he would be attacked."), *F&R adopted by* 2026 WL 2286303 (Aug. 7, 2026). Similarly, even in the context of an alleged CDCR-wide increase in incidence of overdose deaths, based on the single alleged overdose death at CCI approximately 18 months prior to Decedent's death, it cannot be inferred from the factual allegations that Cates knew Decedent faced a substantial (heightened) risk of experiencing a drug overdose.

Second, there are insufficient facts pleaded in the SAC to infer that the safety check deficiency Plaintiffs allege resulted in Decedent's death—that no correctional officer conducted a check of Decedent within an 18-hour period leading up to his passing—was a systemic deficiency known to Cates. Thus, Plaintiffs do not allege in relation to any of the three unrelated inmate deaths that they resulted from staff welfare checks that violated the same regulations cited in the SAC as having resulting in Decedent's death; rather, they observe that the deaths were similar to Decedent's death insofar as they were reported to CCI staff by cellmates, not discovered by CCI staff during welfare checks. But the mere fact that an inmate's death was reported to custodial staff before discovery through mandatory safety checks does not reasonably imply that safety checks were deficient. Nor are there any allegations that such details were contained in the underlying reports Cates allegedly reviewed to become aware of the three inmates' deaths or of the fact (if, indeed, such a fact was recorded in the reports) that the inmates' deaths were attributable to deficiently conducted mandatory safety checks.

And even if Plaintiffs were to plead such facts, the three incidents over an 18-month period are insufficient to constitute a pattern of sufficiently regular occurrence that Cates could be charged with knowing that Decedent faced a heightened risk of serious harm and acting deliberately indifferently to such risk. A comparison of two Sixth Circuit cases illustrates this point. First, in *Zakora v. Chrisman*, 44 F.4th 452 (6th Cir. 2022), the court found that two inmate drug overdoses that occurred in a relatively small unit just two days prior to Zakora's fatal overdose presented a sufficiently obvious risk to permit the drawing of an inference that the defendant warden knew of

a substantial risk of harm to the other inmates in that same unit. *Id.* at 472. In contrast, in *Caraway v. CoreCivic of Tenn.*, LLC, 98 F.4th 679 (6th Cir. 2024), the Court affirmed the dismissal of an inmate-estate's complaint against senior prison officials (including the warden) for failing to prevent the decedent's overdose death. The court in *Caraway* reasoned that the generalized allegations about the defendant's failure to respond to the alleged drug problem was a "far cry from Zakora's specific, close in time failure." *Id.* at 685. The court noted that the complaint contained only generalized allegations that the institution's understaffing led to rampant drug use because officials could not perform adequate inspections.

This case is quite unlike the facts at issue in *Zakora* and more akin to *Caraway*. In short, the direct liability theory Plaintiffs advance against Cates relies on a tenuous assertion of constructive knowledge resulting from three sporadic and dissimilar incidents that does not permit the drawing of any reasonable inference that Cates acted with deliberate indifference. *Cf. Farmer*, 511 U.S. at 842-43 (noting that a prison official's knowledge of information concerning "longstanding, pervasive, [or] well-documented" risk of inmate-on-inmate attacks could permit inference of actual knowledge). Accordingly, the Court finds that Plaintiffs have failed to state a cognizable failure to protect claim against Cates and will grant his motion to dismiss this claim with leave to amend.[2]

2. Claim II: Eighth Amendment Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

---

[2] Although possibly more applicable to the liability of the Doe defendants alleged to have been more directly involved in Decedent's safety checks than Cates, Plaintiffs' factual allegations against Cates separately are deficient insofar as they do not plausibly establish that he knew any failure in the performance of mandatory safety checks on Decedent exposed him to a substantial risk of harm. Thus, for instance, there are no allegations that Decedent's safety checks prior to September 9, 2025, were deficient, or that he previously was found to harbor drugs in his cell, or that he previously experienced a drug overdose, or any other facts suggesting a heightened risk of harm. *See Schmitz v. A. Asman*, No. 2:20-cv-00195-JAM-CKD PS, 2021 WL 3362811, at *9 (E.D. Cal. Aug. 3, 2021) (recommending dismissal of parent-estate's complaint given its "deficiency in failing to plead sufficient facts to suggest that either [correctional officer] knew that failing to fully check on [decedent] during their rounds exposed him to a substantial risk of harm," considering correctional officers were unaware of his mental health records and facts suggesting he was a danger to himself), *F&R adopted by* 2021 WL 4356035 (Sept. 24, 2021). *See id.* at *11 (noting that the correctional officers' "allegedly substandard monitoring of [the decedent] does not state a claim of deliberate indifference because—as discussed above—there is no accompanying allegation that either officer was actually aware that [the decedent] was suffering an overdose, or that he was at heightened risk of self-harm due to mental health issues.").

infliction of pain.”’” *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first “show a serious medical need by demonstrating that failure to treat a prisoner’s condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants’ response to the need was deliberately indifferent.” *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need “include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual’s daily activities; or the existence of chronic and substantial pain.” *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (“Examples of serious medical needs include ‘[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual’s daily activities; or the existence of chronic and substantial pain”).

As to the second prong, deliberate indifference in medical cases requires showing: (a) a purposeful act or failure to respond to a prisoner’s pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). “A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate’s claim that the defendant was deliberately indifferent to his needs.” *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Plaintiffs allege that Decedent “exhibited visible symptoms of medical distress, including complaints of severe abdominal pain and calls for help.” (Doc. 23 ¶ 77). Plaintiffs contend that “Defendants”—including, presumably, the warden, Defendant Cates—were deliberately

indifferent because they failed to observe his distress or answer his pleas for help given that custodial staff did not undertake mandatory safety checks during the 18 hours leading-up to his death. *Id.* ¶¶ 78-79. But as to Cates, these allegations are insufficient for the same reasons they are insufficient to support a cognizable failure to protect claim. A claim for deliberate indifference to serious medical needs is governed by "a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiffs do not directly name Cates in any of the allegations contained within this claim and they otherwise fail to plead sufficient facts establishing the requisite level of knowledge on the part of Cates regarding Decedent's serious medical needs and an intentional disregard for the risk he faced. Accordingly, the Court finds that Plaintiffs have failed to state a cognizable deliberate indifference to serious medical needs claim against Cates and will grant his motion to dismiss this claim with leave to amend.

3. Claim III § 1983 Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quotations omitted; quoting *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir.2007)). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (internal quotations omitted; quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)), *abrogated on other grounds by Farmer*, 511 U.S. at 836.

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

In support of the supervisory liability claim against Cates, Plaintiffs merely incorporate the alleged deliberate indifference discussed in more detail above relating to Cates's purported knowledge or three unrelated inmate deaths and his failure to take corrective action with respect to mandatory safety check deficiencies. (Doc. 23 ¶ 85). Other than these general allegations implicating an alleged failure by Cates to implement policies and procedures to prevent overdose deaths from occurring, Plaintiffs plead no facts regarding Cates's actions or inactions that are directly related to Decedent's death. Plaintiff would have the Court infer that because the prior

deaths were purportedly discovered and reported by other prisoners, the welfare checks necessarily were deficient. For the reasons explained above, no such inference reasonably may be drawn. The resulting allegations are inadequate to maintain a supervisory liability claim. *See Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (noting that a supervisor not "directly involved" in the allegedly unconstitutional conduct cannot be liable under a supervisory liability theory based on allegations he "promulgated unconstitutional policies and procedures which authorized the particular conduct" without demonstrating the supervisor's knowledge of the unconstitutional conditions and culpable actions by his subordinates).

Accordingly, the Court finds that Plaintiffs have failed to state a cognizable supervisory liability claim against Cates and will grant his motion to dismiss this claim with leave to amend.

4. Qualified Immunity

Because the Court will grant Defendant's motion to dismiss the § 1983 claims, the Court need not reach Defendant's separate argument regarding qualified immunity.

**C. Plaintiffs' State Law Claims are not Barred by the Government Claims Act**

Defendant argues that Plaintiffs' state law claims are subject to dismissal for failure to comply with California Government Claims Act (GCA) because Plaintiffs (1) filed the SAC six days before the 45-day GCA response period had expired, (2) failed to name Defendant by name or title, and (3) failed to describe the injury, damage or loss incurred. (Doc. 28-1 at 10). In support of his motion, Defendant attaches both of Plaintiffs' GCA form submissions, dated November 4, 2025, and March 4, 2026 (Doc. 28-3, Exhibits 1, 2) and notes that the operative SAC was filed less than 45 days after the date of the most recent claim form (March 4, 2026). The parties do not dispute that Plaintiffs' claims asserted in the SAC are subject to the GCA's requirement that the claims be properly presented prior to the SAC's filing. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Ocean Servs. Corp. v. Ventura Port Dist.*, 15 Cal. App. 4th 1762, 1775 (1993), *as modified on denial of reh'g* (June 23, 1993).

Relevant here, Section 910.6(a) of the California Government Code provides:

> (a) A claim may be amended at any time before the expiration of the period designated in Section 911.2 or before final action thereon is

> taken by the board, whichever is later, if the claim as amended relates to the same transaction or occurrence which gave rise to the original claim. *The amendment shall be considered a part of the original claim for all purposes*.

Cal. Gov't Code § 910.6 (emphasis added).

California courts have held that where a second claim relates to the same underlying facts and amounts to no more than an attempt to amend the original claim, the amendment relates back to the date of the original claim. *See Sofranek v. Cty. of Merced*, 146 Cal. App. 4th 1238, 1247 (2007) (citations omitted). This is dictated by the language of Section 910.6(a), emphasized above. *Id.* at 1248. Consistent with this authority, Plaintiffs' most recent GCA claim submission relates back to the date of the earlier submission (November 4, 2025). Therefore, because Plaintiffs' operative complaint was filed more than 45 days after the filing of their operative government claim, this action is not untimely and not barred by the GCA.

Defendant separately argues that Plaintiffs' government claims are defective because they did not specifically name Defendant or mention the nature of Decedent's death. The GCA is not intended "to prevent surprise," rather, it is intended to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 738 (2007). "When a public entity receives a document which contains the information required by § 910 and is signed by the claimant [] as required by § 910.2, the public entity has been presented with a 'claim[.]'" *Phillips v. Desert Hosp. Dist.,* 49 Cal. 3d 699, 707 (1989). Because the claims statute is designed to give a public entity "notice sufficient for it to investigate and evaluate the claim ... the statute should not be applied to snare the unwary where its purpose is satisfied." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004). "Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements ... even though it is technically deficient in one or more particulars.'" *Sparks v. Kern Cnty. Bd. of Supervisors*, 146 Cal. App. 4th 794, 800 (2009) (citation omitted).

However, the doctrine "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." *Id.* (quotation omitted).

Plaintiffs' amended GCA claim form gives sufficient notice as required. Following *Stockett* (*supra*), the details provided in Plaintiffs' claim forms unquestionably gave the government entity notice sufficient for it to investigate and evaluate Plaintiffs' claims relating to Decedent's death—even accepting that the forms did not name the warden (Cates) of the facility at issue (which is not a statutory requirement). *Santee v. Santa Clara Cty. Office of Educ.*, 220 Cal. App. 3d 702, 713 (1990). Specifically, the amended government claim form describes conduct that implicates Defendant in the purported failures of correctional officers and supervisors undertaking the mandatory welfare checks, as well as in staffing and review of institutional reports. (Doc. 28-3, Exhibit 2 at 36) (identifying names of the presently known employees including supervising sergeants, lieutenants, watch commander and any supervisor responsible for enforcing welfare-check policies). Because Plaintiff's theory of wrongful conduct does not present a new cause of action, nor does it center on acts or omissions committed at different times or different places, the amended claim form at least substantially complies with the GCA requirements. *See Greene v. Cal. Dep't of Corr. & Rehab.*, No. 2:23-cv-00082 WBS DMC, 2024 WL 477353, at *2-3 (E.D. Cal. Feb. 7, 2024) (finding estate's claim form relating to inmate's in-custody death complied with GCA by generally describing the inmate's murder and implicating custodial staff's responsibility for failing to protect him; finding "[i]t is reasonable to expect that the state, based on the information provided in the claim, would investigate the chain of events leading to the attack, correctional officials' actions during the attack, and officials' actions immediately following the attack.") (citing *Blair v. Super. Ct.*, 218 Cal. App. 3d 221, 226 (1990) & *White v. Super. Ct.*, 225 Cal. App. 3d 1505, 1511 (1990)).

Accordingly, the Court finds that Plaintiffs; government claims are not defective procedurally or substantively.

**D. Defendant's Remaining Arguments are Moot**

Considering the foregoing analysis warranting the grant of Defendant's motion and dismissal of all section 1983 claims, the remaining claims in this action all are brought pursuant to

state law. The Court may decline supplemental jurisdiction over state law causes of action under 28 U.S.C. § 1367(c) if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the ... values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1999). The Ninth Circuit has "frequently recognized that when federal claims are dismissed before trial, supplemental state claims should ordinarily also be dismissed." *Avelar v. Youth And Fam. Enrichment Servs.*, 364 Fed. Appx. 358, 359 (9th Cir. 2010) (*citing, inter alia, Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 651 (9th Cir. 1984)).

Here, the Court has concluded that Plaintiffs' federal claims over which it has original jurisdiction are not cognizable. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). While the Court recognizes that litigation of a new suit places a burden on Plaintiffs, Plaintiffs make no showing to warrant this Court retaining jurisdiction over state law claims. *See* (Doc. 34). The remaining claims rely only on state law and, thus, a state court is in a better position to address said issues.

The Court generally declines to exercise supplemental jurisdiction over state law claims in the absence of viable federal claims and this case presents no exception. 28 U.S.C. § 1367(c)(3); *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (if court declines to exercise supplemental jurisdiction over state law claims once court dismissed federal claims, then the court should dismiss the state law claims without prejudice).

**E. Leave to Amend**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the

merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010). A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, Plaintiffs request leave to amend any claim dismissed. (Doc. 34 at 28). Given that leave to amend is to be liberally granted, the Court will permit Plaintiffs to amend the complaint only to the extent they are able in good faith to cure the defects noted above. At present, it does not appear to this Court that amendment would be futile.

## IV. __Conclusion and Order__

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's request for judicial notice (Doc. 28-3, Exhibits 1 & 2) is GRANTED;
2. Defendant's motion to dismiss (Doc. 28) is GRANTED as to the first, second, and third causes of action (asserted pursuant to 42 U.S.C. § 1983) against Defendant;
3. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims (fourth, fifth, and sixth causes of action) against Defendant;
4. Plaintiffs are GRANTED leave to file a third amended complaint;
5. Within 21 days of entry of this order, Plaintiffs SHALL file any third amended complaint; and
6. Defendant SHALL file a response to any third amended complaint within 14 days of service of the third amended complaint. *See* Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

Dated: **November 12, 2026**

UNITED STATES MAGISTRATE JUDGE